**In re AAPEX SYSTEMS, INC., Debtors.**

**Lucien A. Morin, II, Trustee of AAPEX Systems, Inc., Plaintiffs,**

**v.**

**Elmira Water Board, Defendants.**

**Lucien A. Morin, II, Trustee of AAPEX Systems, Inc., Plaintiffs,**

**v.**

**Canton Sabrecom, Inc., Defendants.**

**Lucien A. Morin, II, Trustee of AAPEX Systems, Inc., Plaintiffs,**

**v.**

**South Williamsport Sabrecom, Inc., Defendants.**

**Bankruptcy No. 98–20728.**
**Adversary No. 99–2082, 99–2054, 99–2137.**

United States Bankruptcy Court, W.D. New York.

Dec. 30, 1999.

---

**12.** This opinion is intended to supersede in all respects the Memorandum of Decision issued on January 9, 2002.

Jeffrey A. Dove, Menter, Rudin, Trivelpiece, Syracuse, NY, for plaintiff.

James W. Gormley, Damon & Morey LLC, Buffalo, NY, for defendant.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On February 27, 1998, an involuntary Chapter 7 petition was filed against AAPEX Systems, Inc. ("AAPEX"). An Order for Relief was entered on March 23, 1998, after AAPEX consented to the relief requested in the involuntary petition, and on April 1, 1998, Lucien A. Morin, II, Esq. was appointed as the Chapter 7 case trustee (the "Trustee").

AAPEX had been in the business of providing payroll and related services to clients.[1]

---

1. The standard form "Payroll Service Agreement" which AAPEX entered into with its clients enumerated the services it provided, as follows:

"1. *Services Provided.* AAPEX shall provide pursuant to the terms of this agreement payroll processing services and CLIENT shall purchase from AAPEX such

After the Order for Relief was entered, former clients of AAPEX filed proofs of claim which asserted that they were owed in excess of one million dollars from AAPEX because they remained liable for payroll taxes that AAPEX had failed to pay on their behalf pursuant to the Payroll Service Agreement, even though they had paid AAPEX the amount of money necessary to pay their tax liabilities. Some of the proofs of claim also asserted that AAPEX was liable for the penalties and interest that the taxing authorities had assessed against the claimants because AAPEX had failed to pay their payroll taxes when they were due.

Between February 4, 1999 and March 29, 1999, the Trustee commenced fifty-eight separate adversary proceedings against former clients of AAPEX. The Trustee alleged that various transfers made by AAPEX: (1) to the Internal Revenue Service (the "IRS") or state taxing authorities in order to pay past due payroll taxes or related penalties and interest for those clients; or (2) to the clients, so that they could pay their own past due payroll taxes which AAPEX had failed to pay, were avoidable preferential transfers.

In his Complaint against the Elmira Water Board ("Elmira"), the Trustee alleged that the transfers which resulted when five checks written by AAPEX on its Marine Midland Bank account (the "Master Payroll Account")[2] cleared within the 90–day preference period were avoidable preferential transfers under Section 547.[3] The five transfers which the Trustee sought to avoid in the "Elmira Adversary Proceeding" can be summarized as follows:

| Transaction | Check | # Date Cleared | Payee | Amount | Purpose |
|---|---|---|---|---|---|
| # 1 | 39743 | 12/9/97 | IRS | $57,975.56 | 2nd 1/4 '97 Tax |
| # 2 | 95128 | 1/18/98 | IRS | $11,918.27 | 2nd 1/4 '97 Tax Penalty & Interest |

payroll services. These services shall include a provision of payroll checks including signed checks and signed checks, payroll registers and management reports including current payroll registers, employee status reports, quarter to date reporting to the appropriate governmental authorities, and banking services including maintenance of a master payroll account, direct deposits, and payment by CLIENT of bank service charges."

2. The AAPEX Marine Midland Bank account appears to be the master payroll account referred to in Paragraph 1 of the Payroll Service Agreement. *See* Footnote 1.

3. Section 547(b) provides that:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b) (1999.)

| # 3 | 95145 | 1/27/98 | Elmira | $82,924.64 | 3rd 1/4 '97 941 Tax |
|---|---|---|---|---|---|
| # 4 | 95146 | 1/28/98 | IRS | $11,042.30 | 3rd 1/4 '97 Tax Penalty & Interest |
| # 5 | 95147 | 1/28/98 | IRS | $65,277.59 | 4th 1/4 '97 941 Tax |

In his Complaint against Canton Sabrecom, Inc. ("Canton"), the Trustee alleged that the transfer which resulted when a check written by AAPEX on its Master Payroll Account cleared within the 90–day preference period was an avoidable preferential transfer under Section 547. The transfer which the Trustee sought to avoid in the "Canton Adversary Proceeding" was as follows:

| Transaction | Check | # Date Cleared | Payee | Amount | Purpose |
|---|---|---|---|---|---|
| # 1 | 95133 | 1/29/98 | IRS | $ 1,002.28 | 3rd 1/4 '96 Penalty & Interest |

In his Complaint against South Williamsport Sabrecom, Inc. ("Williamsport")[4], the Trustee alleged that the transfers which resulted when three checks written by AAPEX on its Master Payroll Account cleared within the 90–day preference period were avoidable preferential transfers under Section 547. The three transfers which the Trustee sought to avoid in the "Williamsport Adversary Proceeding" can be summarized as follows:

| Transaction | Check | # Date Cleared | Payee | Amount | Purpose |
|---|---|---|---|---|---|
| # 1 | 31831 | 12/2/97 | IRS | $ 20,786.80 | 2nd 1/4 '97 941 Tax |
| # 2 | 38679 | 12/18/97 | IRS | $ 11,918.27 | 4th 1/4 '96 Penalty & Interest |
| # 3 | 95008 | 12/17/97 | Williamsport | $138,224.17 | 2nd, 3rd & 4th 1/4 '97 941 Tax |

On March 2, 1999, Elmira interposed an Answer which: (1) denied that the transfers to the IRS to pay penalties and interest were for the benefit of Elmira; (2) denied "any inference that the sums transferred, except the sums of $11,918.27 and $11,042.30, were property of Debtor"; and (3) alleged that AAPEX had a duty to pay over to the IRS the funds in its possession that Elmira had paid to AAPEX because they were subject to a trust.

On May 7, 1999, Elmira filed a Motion for Summary Judgment (the "Elmira Motion for Summary Judgment") pursuant to Rule 7056, captioned as a Notice of Motion to Dismiss Complaint, which alleged that

4. Canton and Williamsport are wholly owned subsidiaries of Sabre Communications, Inc.. ("Sabre"). Each entered into a Payroll Service Agreement with AAPEX that was executed by Mr. Keith Thomas, the Treasurer of Sabre.

the Trustee's Complaint failed to state a claim upon which relief could be granted. The Motion alleged that: (1) funds, consisting of withholding taxes deducted from the wages of Elmira's employees, were deposited into an escrow account maintained by AAPEX until they were transferred to the IRS or Elmira by the five checks enumerated in the Trustee's Complaint; (2) the funds transferred to Elmira and the IRS to pay the unpaid payroll taxes of Elmira, rather than the amounts due from Elmira for penalties and interest, were not the property of AAPEX, so that the requirement of Section 547(b) that the debtor must have an interest in the property transferred had not been met; and (3) the funds transferred to the IRS and Elmira for the payment of taxes were not the property of AAPEX because: (a) the decision of the United States Supreme Court in *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (*"Begier"*) held that monies withheld from an employee's wages were not recoverable from the Internal Revenue Service when a payment was made to it during the preference period for past due payroll taxes, because the payments were deemed to be the payment of trust funds that were not the property of the employer-debtor; (b) the *Begier* rationale should be extended to the transfers of funds made by AAPEX to the IRS and to Elmira, which then paid the funds over to the IRS, even though the payments were not made by the employer who withheld the wages; (c) it did not matter whether the funds transferred by AAPEX to the IRS and Elmira were actually the payroll taxes withheld from the employees of Elmira, or whether they were payroll taxes withheld from the employees of other clients of AAPEX, since in either case, the funds were trust funds and were not property in which AAPEX had an interest for purposes of Section 547; and (d) even if the funds transferred by AAPEX to the IRS and Elmira were not impressed with a trust pursuant to 26 U.S.C. § 7501 [5] ("Section 7501"), the funds were paid over to AAPEX by its clients in escrow, pursuant to the terms of the Payroll Service Agreement, so that beneficial title to the funds never passed to AAPEX.

On April 12, 1999, Canton and Williamsport filed motions pursuant to Rule 7012(b) to dismiss the Trustee's Complaints. The Motions alleged that the Complaints failed to state a claim upon which relief could be granted (the "Canton and Williamsport Motions to Dismiss"). The Canton and Williamsport Motions alleged that the funds transferred to the IRS and Williamsport, which then paid the funds over to the IRS, as enumerated in the Trustee's Complaints, were not the property of AAPEX, but were at all times the exclusive property of the United States Government. The Motions further alleged that the funds transferred to the IRS and Williamsport were not the property of AAPEX because: (1) AAPEX was at all times acting as an agent and successor trustee to Canton and Williamsport with respect to the funds which were withheld from the wages of the

**5.** Section 7501. *Liability for taxes withheld or collected*

(a) General rule.—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

(b) Penalties.—

For penalties applicable to violations of this section, see sections 6672 and 7202.

26 U.S.C. § 7501 (1999).

employees of Canton and Williamsport and impressed with a Section 7501 trust; (2) Section 7501 trust fund taxes are the exclusive property of, and are for the exclusive use of, the United States Government; (3) a Section 7501 trust is a floating trust in a specific dollar amount that does not attach to specific identifiable funds; and (4) the funds which AAPEX transferred to the IRS and Williamsport, as enumerated in the Trustee's Complaints, would not have been property of the bankruptcy estate had they been in the possession of AAPEX at the time the Order for Relief was entered, because AAPEX had, at best, only bare legal title to the funds and no beneficial interest.

The Trustee interposed opposition to the Elmira, Canton and Williamsport Motions which asserted that: (1) pursuant to the terms of the Payroll Service Agreement, a client would provide AAPEX with its payroll information for a pay period and when advised by AAPEX, pay it, for deposit into the Master Payroll Account: (a) in some cases the amount necessary to pay that client's payroll; (b) the amount necessary to pay the clients payroll taxes; and (c) the processing fees due AAPEX; (2) pursuant to the terms of the Payroll Service Agreement, AAPEX was obligated to process a client's payroll information, deliver payroll checks drawn on the Master Payroll Account to the client for distribution to its employees, and pay the client's payroll tax liabilities to the IRS and the appropriate state taxing authorities[6]; (3) after Elmira and Williamsport realized that AAPEX had failed to pay certain of their payroll tax liabilities to the IRS, they demanded and received checks from AAPEX, drawn on the Master Payroll Account, and utilized the funds received to pay the past due payroll taxes enumerated in the Trustee's Complaints; (4) since AAPEX had agreed to pay any penalties and interest assessed to a client because of its failure to pay any payroll taxes when due, the amounts paid to the IRS by AAPEX in payment of penalties and interest assessed to Elmira, Canton and Williamsport, as enumerated in the Trustee's Complaints, could not have been paid from the amounts paid to AAPEX by those clients which they have asserted were trust funds or amounts held in escrow; (5) the amounts paid to AAPEX by clients in connection with the services AAPEX contracted to perform under the Payroll Service Agreement were not funds required to be or actually ever held in trust by AAPEX; (6) the amounts paid to AAPEX by clients in connection with the Payroll Service Agreement were always co-mingled by AAPEX and were unidentifiable as to the source; (7) because during the preference period the Master Payroll Account was continuously overdrawn, the amounts transferred by AAPEX to the IRS, Elmira and Williamsport, as enumerated in the Trustee's Complaints, were not the funds paid by those clients to AAPEX in order for it to pay the payroll taxes or the penalties and interest for the specific taxable quarters in question; (8) because the fact situations were nearly identical, the rationale of the United States Court of Appeals for the Ninth Circuit in its decision in *In re Hamilton Taft & Co.*, 53 F.3d 285 (9th Cir.), *vacated* 68 F.3d 337 (9th Cir.1995) ("*Hamilton Taft*"), should be utilized by the Court in deciding the pending Motions; and (9) like the fact situation in *Hamilton Taft*, and unlike the fact situation in *Begier*: (a) the transfers by AAPEX which the Trustee asserted he could avoid were not made by the taxpayer employer to the

---

**6.** The Court believes that other companies which provide similar payroll services never receive monies from the clients to pay payroll and payroll taxes, but provide checks to the clients for those payments which are drawn on accounts maintained by the clients.

IRS, but were made by a third-party service provider, and in some cases not even to the IRS; (b) the transfers were of funds co-mingled and unidentifiable as to the source, and were clearly not the actual funds withheld from the wages of the employees of Elmira, Canton or Williamsport for the specific tax quarters enumerated in the Trustee's Complaints; (c)the amounts paid to AAPEX by its clients were not impressed with a trust, but were simply general funds of the clients in which AAPEX had a legal and beneficial interest so that it could perform the services that the parties had contracted for in Payroll Service Agreement; and (d) the use of reasonable "tracing presumptions" could not result in a finding that the funds transferred by AAPEX to Elmira, Canton and Williamsport, as enumerated in the Trustee's Complaints, were the funds of those employer-clients that were paid to AAPEX by those clients and impressed with a Section 7501 trust for the taxes or the penalties or interest actually paid with those specific funds.

## DISCUSSION

### I. Motions to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable by Rule 7008, requires that a pleading which sets forth a claim for relief contain a short and plain statement of the claim showing that the pleader is entitled to relief.

Rule 8(f) of the Federal Rules of Civil Procedure, requires that all pleadings be construed to do substantial justice.

This Court, in considering motions to dismiss under Rule 7012 for a failure to state a claim upon which relief can be granted, is aware that: (1) the purpose of such a motion is to test the legal sufficiency of a complaint; (2) the court should view the complaint in a light that accepts the truth of all material factual allegations and then draw all reasonable inferences in favor of the plaintiff; (3) the complaint need only meet the liberal requirement of a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests; and (4) nevertheless, the complaint should be well pleaded and it must contain more than mere conclusory statements that a plaintiff has a valid claim of some type and is thus deserving of relief, See In re John's Insulation, Inc., 221 B.R. 683, 687 (Bankr. E.D.N.Y.1998) and the cases cited therein.

The Court is also aware that: (1) a motion to dismiss pursuant to Rule 7012 may not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief; and (2) the court is not entitled to consider matters outside the pleadings or to weigh evidence that might be presented at trial. See In re Albion Disposal, Inc., 217 B.R. 394, 401 (W.D.N.Y.1997) ("Albion Disposal").

The Court is further aware that: (1) justice requires that the defendant be served with a complaint which states the particular statute or code section relied upon by the plaintiff and a set of facts to provide the defendant with enough information to formulate and file an answer, See In re Marceca, 127 B.R. 328, 332 (Bankr.S.D.N.Y.1991); and (2) if the court relies upon matters found outside the complaint, it is required to convert the motion to dismiss into a motion for summary judgment, See John's Insulation, at 685.

Since the Court has clearly considered matters outside the pleadings in deciding these matters, it must treat both of the pending motions as motions for summary judgment.

## II. *Summary Judgment*

Under Federal Rule of Civil Procedure 56(c), judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Rule is clear in "provid[ing] that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Repp v. Webber*, 132 F.3d 882 (2nd Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (further citations omitted)).

Further, as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2nd Cir.1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (further citations omitted)). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Repp*, at 889 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (further citations omitted)).[7]

The duty of a court on a motion for summary judgment is to determine whether there are any genuine issues of material fact to be resolved by trial, and not to decide factual issues. As the Second Circuit has aptly stated: "In this regard, the Court's task is issue identification, not issue resolution. In performing this task, we must assume the truth of the non-movant's evidence." *Repp*, at 890; see also *Anderson*, at 249, 106 S.Ct. 2505.

The moving party, however, does not bear the burden of proving that his opponent's case is "wholly frivolous." *Brady*, at 210; see also *Celotex*, at 323–26, 106 S.Ct. 2548. The Second Circuit in *Brady* further stated that: "In *Celotex*, the Supreme Court made it clear that in cases where the non-movant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if you can point to an absence of evidence to support an essential element of the non-moving party's claim." *Brady*, 863 F.2d at 210–11.

## III. *Summary of Decision*

The Canton and Williamsport Motions to Dismiss are in all respects denied. For the legal, policy and equitable reasons that will be discussed more fully in this Decision & Order, I hold that: (1) the funds which were transferred by AAPEX to the IRS and Williamsport on behalf on Canton and Williamsport during the preference period were not impressed with a Section 7501 trust, and, therefore, the holding in *Begier* cannot be extended; and (2) the Trustee's adversary proceedings against Canton and Williamsport cannot be dismissed as a matter of law.

The Elmira Motion for Summary Judgment is also in all respects denied. To the extent the Motion requested that as a matter of law the Court find that the transfers made by AAPEX to the IRS and Elmira were made with funds that were impressed

---

7. This Court is mindful that factual materiality is governed by reference to the applicable substantive law. *Repp*, at 890.

with a Section 7501 trust, it is denied for the same reasons as the Canton and Williamsport Motions to Dismiss. To the extent the Motion requested that as a matter of law the Court find that even though the funds were not impressed with a Section 7501 trust, they were, nevertheless, trust funds which were held by AAPEX for the benefit of Elmira and in which AAPEX had no beneficial interest, so that they were not property of the AAPEX estate as required by Section 547(b), I find that there remain genuine issues of material fact as to whether the funds were required to be or were actually ever held in trust by AAPEX.

## IV. *Case Law*

 We know from the decision of the United States Supreme Court in *Begier* that: (1) for a trustee to avoid a transfer of an interest of the debtor in property under Section 547(b), the property transferred must be property that would have been part of the bankruptcy estate had it not been transferred pre-petition; (2) a debtor that holds property in trust for another does not possess an equitable interest in the property, and that property is not property of the estate under Section 541 or property in which the debtor has an interest for purposes of Section 547(b); (3) the trust of federal withholding taxes, unlike a common-law trust where there is an identifiable res, is a trust in an abstract amount that is a dollar figure not tied to any particular assets; (4) often common-law tracing rules are not helpful when making inquiry into the payment of trust fund taxes; (5) the voluntary pre-petition payment from its assets by an employer-debtor of its trust fund obligation to the IRS is alone sufficient to establish a nexus between the amount held in trust pursuant to Section 7501 and the funds paid, so that any voluntary pre-petition payment of trust fund taxes by an employer-debtor

with its funds, regardless of the source of funds, is not a payment of property of the debtor or property in which the debtor had an interest for purposes of Section 547(b); (6) the comments of Representative Edwards in connection with the ultimate passage of The Bankruptcy Reform Act of 1978: "the Courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other taxing authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case," was interpreted by the Supreme Court as an expectation by Congress that the IRS would have to show some connection between a Section 7501 trust and the assets sought to be applied to a debtor's trust fund tax obligation; and (7) as stated by Justice Scalia in his concurrence, "it is clear from the statutory scheme that the taxpayer has the power to identify which portion of its assets constitutes the trust fund."

In its decision in *Hamilton Taft*, which involved a debtor that had contracted with clients to pay their payroll taxes and prepare all relevant reports, the Ninth Circuit: (1) determined that after trust fund taxes were transferred to the debtor, the debtor held the trust fund taxes free of trust and they were property of the debtor's estate, because the funds had been transferred to the debtor without requiring it to segregate those funds and hold them in trust; (2) determined that it was significant that the debtor did not actually hold the funds paid to it in trust, but comingled the funds it received and treated them as its own assets, including using them to pay its operating expenses; (3) felt that it was of paramount importance that the debtor was a third-party to whom trust fund taxes were conveyed as consideration for a contract; and (4) determined that the Court should not extend the hold-

ing in *Begier* more broadly than was necessary to accomplish its purposes when do so necessarily would undermine the policy of equality of distribution among creditors, a fundamental policy of the Bankruptcy Code, especially when the IRS would not be affected by a failure to extend the *Begier* holding.

## V. *Analysis*

### A. *Trust Funds—Section 7501*

There is nothing: (1) in the Internal Revenue Code or Regulations; (2) specifically in Section 7501; (3) specifically in the Payroll Service Agreement; (4) in case law that this Court is aware of; or (5) in the overall facts and circumstances presented in these adversary proceedings which would support a finding that the funds transferred to the IRS, Elmira or Williamsport during the preference period were impressed with a Section 7501 Trust for the benefit of Elmira, Williamsport or Canton.

Under 26 U.S.C. § 3401[8] ("Section 3401"), as employers, Elmira, Williamsport and Canton were required by 26 U.S.C. § 3402[9] ("Section 3402") to deduct and withhold payroll taxes when its employees were paid and, pursuant to Section 7501, the amount withheld, not the funds actually withheld, is deemed to be a special fund in trust for the United States.

Elmira, Williamsport and Canton could have had its own employees perform any and all required payroll processing services, including the payment of wages, the withholding of payroll taxes and the payment of the withheld taxes into proper federal tax depositories or directly to the IRS, but they elected to outsource those services. In determining that it was more cost effective or beneficial to their organizations to outsource these payroll services, they could have elected to contract with a service provider in a manner that would have provided them with all of the required payroll processing services, but also allowed them to retain possession and control of all of the funds necessary to pay payroll and payroll taxes.[10] However, Elmira, Williamsport and Canton chose to contract with AAPEX in a manner which required that they pay it in advance funds

---

8. Section 3401 provides that:
 (d) Employer.—For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—
 (1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" (except for purposes of subsection (a)) means the person having control of the payment of such wages, and
 (2) in the case of a person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, the term "employer" (except for purposes of subsection (a)) means such person.
 26 U.S.C. § 3401 (1999).

9. Section 3402 provides that:
 (a) Requirement of withholding.—
 (1) In general.—Except as otherwise provided in this section, every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the Secretary...
 26 U.S.C. § 3402 (1999).

10. Checks to the employees and the taxing authorities could simply have been prepared by the service provider but drawn on accounts that were at all times maintained by the clients. This is how the Elmira and Williamsport payroll was handled. Although this may not have been the standard way that AAPEX operated with respect to payroll taxes, there is no evidence to indicate that for an enhanced fee AAPEX would not have performed under such a contract.

equivalent to the amounts that would be due for their payroll taxes, while the liability to the United States Government for payroll taxes and any breach of the trust obligations set forth in Section 7501 at all times remained with them, as employers.

Although under the Payroll Service Agreement AAPEX had a contractual obligation to pay the payroll taxes of its clients when they became due and when AAPEX had been paid sufficient funds to enable it to make the payments, this Court is not aware of any provision in the Internal Revenue Code or Regulations which, on the facts of these cases, resulted in AAPEX being directly liable to the United States Government for the Section 7501 taxes withheld from the employees of its clients.

If Elmira, Williamsport, Canton or the other clients of AAPEX had intended for AAPEX to be directly liable for the payment of the taxes withheld from the wages of their employees, they could have insisted that the provisions of 26 C.F.R. § 31.3504–1 [11] have been complied with. They would have insisted that Form 2678 ("Employer Appointment of Agent") be completed rather than simply Form 8655 ("Reporting Agent Authorization for Magnetic Tape/Electronic Filers"). That would have resulted in the appropriate district director of the IRS authorizing AAPEX to perform the acts required of the clients, as employers, so that AAPEX would have been directly liable for the taxes and would have been required to hold any withheld taxes in a special fund in trust for the United States. However, no evidence was presented to the Court in connection with the pending Motions which confirmed that the district director of the IRS ever made the required designation of AAPEX as an agent for Elmira, Canton, Williamsport or any other client of AAPEX.

In addition, there is nothing in the Payroll Service Agreement which specifically provides that the funds transferred to AAPEX: (1) are impressed with a Section

11. Sec. 31.3504–1 Acts to be performed by agents.

(a) In general. In the event wages as defined in chapter 21 or 24 of the Internal Revenue Code of 1954, or compensation as defined in chapter 22 of such Code, of an employee or group of employees, employed by one or more employers, is paid by a fiduciary, agent, or other person, or if such fiduciary, agent, or other person has the control, receipt, custody, or disposal of such wages, or compensation, the district director, or director of a service center, may, subject to such terms and conditions as he deems proper, authorize such fiduciary, agent, or other person to perform such acts as are required of such employer or employers under those provisions of the Internal Revenue Code of 1954 and the regulations thereunder which have application, for purposes of the taxes imposed by such chapter or chapters, in respect of such wages or compensation. If the fiduciary, agent, or other person is authorized by the district director, or director of a service center, to perform such acts, all provisions of law

(including penalties) and of the regulations prescribed in pursuance of law applicable to employers in respect of such acts shall be applicable to such fiduciary, agent, or other person. However, each employer for whom such fiduciary, agent, or other person performs such acts shall remain subject to all provisions of law (including penalties) and of the regulations prescribed in pursuance of law applicable to an employer in respect of such acts. Any application for authorization to perform such acts, signed by such fiduciary, agent, or other person, shall be filed with the district director, or director of a service center, with whom the fiduciary, agent, or other person will, upon approval of such application, file returns in accordance with such authorization.

(b) Prior authorizations continued. An authorization in effect under section 1632 of the Internal Revenue Code of 1939 on December 31, 1954, continues in effect under section 3504 and is subject to the provisions of paragraph (a) of this section.
26 C.F.R. § 31–3504–1 (1999).

7501 trust; (2) shall continue to remain property of the clients' impressed with a Section 7501 trust; or (3) are to be segregated to insure that they are always identifiable as Section 7501 trust funds. Furthermore, there is no provision in the Agreement which specifically attempts to designate AAPEX as a successor Section 7501 trustee with regard to the funds the clients transfer to AAPEX to enable it to meet its contractual obligation to pay their payroll taxes.

Also, consistent with the inconsistency of the Payroll Service Agreement, many of the checks issued by AAPEX on the Master Payroll Account read "Agency Check", even though the Agreement specifically provided that AAPEX was not an agent of the client except as required for the IRS deposits. However, as discussed above, that agency requirement of the IRS is only for paperwork purposes, a simple authorization to make deposits, and it not in any way a true agency relationship which would require AAPEX to hold funds in trust pursuant to the requirements of Section 7501.

I believe that when clients paid funds over to AAPEX pursuant to the Payroll Service Agreement, at least with respect to the provisions of Section 7501, they transferred the legal and beneficial interest in those funds to AAPEX so that it could perform the services contracted for under the Agreement. As a result, the funds, like any other funds transferred by the client to a third party provider of goods or services, were no longer assets of the client, but were transferred free of any Section 7501 trust which they may have been impressed with had they remained in the possession of the client employer. Once funds were paid over to AAPEX, as a service provider, they were paid over free of any Section 7501 trust, and the legal and beneficial interest in the funds was

transferred to AAPEX so that it could perform its contractual obligations under the Payroll Service Agreement. At that point, all that the clients were left with was a cause of action against AAPEX if it failed to pay their payroll taxes pursuant to the provisions of the Payroll Service Agreement.

Furthermore, if the funds that were paid over to AAPEX by any individual client were impressed with a Section 7501 trust, there would have been a series of Section 7501 trusts being held by AAPEX, one on behalf of each client. Such individual trusts could only have been administered for the benefit of each individual client, yet there were no procedures provided for in the Payroll Service Agreement or in place with AAPEX to effectively monitor and administer them. Elmira, Williamsport and Canton, however, have asserted that there was a general floating Section 7501 trust in all of the assets paid over by all of the clients to AAPEX for the payment of payroll taxes, and that much the same as in *Begier*, when AAPEX decided to pay a particular payroll tax for a particular client, the funds paid over to the IRS on behalf of that particular client suddenly became impressed with a Section 7501 trust for that particular client and its particular taxes, even though they came from general assets of AAPEX that were no longer traceable or identifiable to that particular client and may have included funds paid over to AAPEX for the payment of payroll, as service fees or for the payment of other client obligations. This notion of a general co-mingled fund of assets received from clients being initially impressed with a general floating Section 7501 trust on behalf of the United States, which is then transformed into a specific Section 7501 trust for a particular client when AAPEX later uses some of the co-mingled funds to pay the payroll taxes of that particular client, is not supported by:

(1) the provisions of the Internal Revenue Code or Regulations; (2) any case law offered by Elmira, Williamsport or Canton; or (3) the decision in *Begier*, which allows an entity to make such a designation in connection with its own assets, but should not be extended to a third party holding co-mingled funds for the purposes of providing a service.

B. *The Payroll Service Agreement*

The Payroll Service Agreement provides that: (1) AAPEX will maintain the Master Payroll Account; (2) AAPEX is granted a security interest and a right of setoff by each client in any funds deposited by the client in "its escrow account"; (3) AAPEX has the responsibility and liability for the timely payment and report of each client's payroll taxes, but only to the extent of available funds, and should AAPEX fail to make timely payment of "these escrowed funds," AAPEX will pay whatever penalties and interest that result; and (4) AAPEX is not an agent of client except were required for the IRS deposits, filings, and correspondence.

It is clear that AAPEX maintained the Master Payroll Account as required by the Payroll Service Agreement, and that the detachable ledger explanation on the bottom of the checks drawn on the Master Payroll Account read "Agency Check." The Trustee has alleged, and Elmira, Canton and Williamsport have not denied, that the funds which AAPEX maintained in the Master Payroll Account were completely co-mingled and unidentifiable as to the source. Furthermore, there is no evidence before the Court in connection with the pending Motions that Elmira, Canton or Williamsport ever insisted that AAPEX establish, maintain and report the status of a truly separate and distinct escrow account for its benefit.

After reading the Payroll Service Agreement and hearing on a preliminary basis at the Evidentiary Hearing how it was that AAPEX and its clients performed under the Agreement, a realistic characterization of the Payroll Service Agreement may be that it was a purchase and sale agreement which provided for the sale of certain services by AAPEX which the clients purchased and paid for in advance. AAPEX agreed to provide certain payroll processing services, including the payment of payroll taxes, and in some cases the payment of the client's payroll and other employee deductions such as garnishments, for which the client simply was required to pay AAPEX, in advance, all of the funds that AAPEX would need to provide the services, as well as a service fee.

From the evidence presented to the Court on the Elmira Summary Judgment Motion and the Canton and Williamsport Motions to Dismiss, it is clear that the contractual provisions of the Payroll Service Agreement, which the movants assert required that AAPEX hold that portion of a clients' funds that represented the amounts necessary to pay its payroll taxes in a specific escrow account for that client, were never fully performed by AAPEX or insisted upon or monitored by Elmira, Canton or Williamsport. There is no evidence before the Court that AAPEX ever established separate escrow accounts for any of its clients, including Elmira, Canton or Williamsport.[12]

It is also clear from the actions of Elmira in January 1998 and Williamsport in December 1997, when they demanded and received funds from AAPEX which they

---

12. There is some evidence that AAPEX may have separately reported to the clients in a manner that may have induced the clients to believe that there may have been separate accounts, but it appears at best at this time that they were just entries on the reports.

knew were not the actual funds that they had paid to AAPEX in advance so that it could pay their payroll tax liabilities for the 2nd or 3rd quarters of 1997[13], that, notwithstanding the references in the Payroll Services Agreement which they have asserted required that AAPEX hold a clients' funds in escrow accounts for that client, Elmira and Williamsport did not in fact consider the funds paid to AAPEX by them or other clients for AAPEX to perform the payroll processing services contracted for, including paying payroll taxes, to actually be held or required to be held in escrow by AAPEX for that particular client. If they believed, as they have asserted, that AAPEX had only bare legal title to, and no beneficial interest in, the funds paid over to them by clients, because the beneficial interest in these state law trust or escrowed funds remained only with the specific client which paid the specific funds to AAPEX, they never would have demanded, received and then converted those funds to their own use and benefit. To the contrary it appears from the evidence presented on the Motions that Elmira and Williamsport believed that: (1) AAPEX had both a legal and beneficial interest in all of the funds that it held, and that AAPEX had the power and right to transfer the funds it did to Elmira and Williamsport, even though they were clearly not the funds that they had paid over to AAPEX; and (2) they had the power to use those funds to pay their own past due payroll taxes, free of any trust or escrow which they have argued existed on behalf of the clients who actually paid those funds over to AAPEX. Therefore, except for any Section 7501 trust which Elmira, Canton and Williamsport have argued existed in the funds, their argument that a state law trust or escrow existed on

a per client basis seems at this point in the pending adversary proceedings both inconsistent with their own actions and disingenuous.

Counsel for Elmira, Williamsport and Canton have asserted that the requirements of Section 547(b) have not been met because if the funds that had been transferred to the IRS, Elmira or Williamsport that are the subject of the Trustee's Complaint had been on hand when the Debtor filed its petition, those funds would not be property of the estate. If the funds were deemed to be trust funds and it was also found to be true that the funds of AAPEX were co-mingled and not identifiable as to source, what would the estate do with those funds? Who would it distribute them to? How would it find or determine the rightful owner of those funds? If it were determined that the funds should be paid over to the IRS, on whose account and for what amounts on those accounts would the funds be paid over to the IRS? It is an interesting statement that counsel makes, but the reality is that someone would have to actually trace those funds on hand, or utilize accepted tracing presumptions to determine who was entitled to those funds, and once those funds were traced in this manner, it seems likely that they would not be found to have been the actual funds paid over to AAPEX by Elmira, Williamsport or Canton, but would be the funds, in whole or in part, of other clients.

However, that still does not address the question of whether once these funds were paid over by the clients to AAPEX they still were impressed with a Section 7501 trust or with any trust, as opposed to being funds to which the legal and benefi-

13. By the Fall of 1997, AAPEX was running what could only be described as a "Ponzi Scheme."

cial interest was transferred to AAPEX so that it could perform the services that they agreed to perform for the actual client who had paid over the funds.

## C. *Equitable Considerations*

Many of the clients of AAPEX paid it one hundred percent of the amounts that would become due for their payroll taxes in advance, but, ultimately had less of a percentage of those taxes paid by AAPEX than did some other clients because of the transfers AAPEX made during the preference period. If the funds transferred by AAPEX during the preference period to the IRS, Elmira and Williamsport are ultimately determined not to be property in which AAPEX had both a legal and beneficial interest for purposes of Section 547, as a whole, the client creditors of AAPEX might ultimately receive a less equitable treatment because the Trustee might not be able to avoid these and similar transfers[14] and then redistribute the recovered funds among the creditors of AAPEX in the implementation of one of the fundamental policies of the Bankruptcy Code, the policy of equality of distribution.

Outside of a bankruptcy proceeding, because the funds clients paid to AAPEX in advance so that it could perform the services contracted for in the Payroll Service Agreement were immediately co-mingled by it and unidentifiable as to the source, the clients would have no recourse against other clients or the IRS to have the monies paid by them and used by AAPEX for the benefit of other clients during the preference period returned to them or correctly applied to their payroll tax liabilities. Because of the co-mingling of funds and the lack of an ability to identify any co-mingled funds to the source, a client would not be able to commence an effective court action against another client or an administrative proceeding before the IRS. They would simply be unable to prove what portion of the funds they paid to AAPEX were used by it to pay another client's taxes within the preference period or otherwise.

In the Bankruptcy Court, however, if the Trustee is able to avoid all or a substantial number of these transfers, the policy of equality of distribution should result in a more equitable overall treatment of the clients of AAPEX, even though it will never be a perfect redistribution of the losses, and the clients affected by any preference recovery do not appear to be in a position to complain. Each client that dealt with AAPEX assumed and accepted a substantial business risk when it: (1) decided to outsource its payroll and related services; (2) contracted with a service provider like AAPEX that did not leave the possession and control of the funds necessary to pay payroll taxes with its clients; (3) signed the ambiguous and ineffective Payroll Servicing Agreement; and (4) failed to insist that there be a segregated account for its funds, and then monitor compliance.

## D. *Policy Considerations*

Although there may be a strong public policy to insure that governmental authorities receive the tax dollars to which they are entitled, especially taxes withheld from an employee's wages, here, unlike in *Begier*, the Trustee is not seeking any recovery from the taxing authorities. In this regard, the decision of the Ninth Circuit Court of Appeals in *Hamilton–Taft* made it clear that courts should not be too quick to extend holdings which implement that policy when it is unnecessary because the

---

**14.** The defendants in the various avoidable preference adversary proceedings commenced by the Trustee may have other defenses to avoidance.

taxing authorities will not be affected by failure to extend such holdings.

With the taxing authorities unaffected whether the holding in *Begier* is extended to the facts and circumstances presented by a third-party service providers payment of payroll taxes from co-mingled funds, certainly the policy of equality of distribution, a fundamental policy of the Bankruptcy Code, cannot be ignored if policy considerations are to be taken into account.

Furthermore, the business risk of a third-party service provider such as AAPEX failing to provide the services contracted for, no matter how important those services may be, can always be minimized in the commercial business world by the purchaser of the services utilizing more effective documentation and monitoring compliance within the parameters of the cost benefit analysis that was made when it decided to outsource the services in question. Should the cost to minimize the risk to an acceptable level become too great, the cost benefit analysis would simply result in the services being provided for in some other fashion. A failure to extend the holding in *Begier* to a third-party payroll service provider would simply not be the end of the payroll service industry. It would only result in potential clients more fully analyzing risk-reward and cost benefit.

### E. *For the Benefit of*

Elmira has asserted in its Motion for Summary Judgment that the transfers by AAPEX to the IRS to pay penalties and interest for past due payroll taxes, as enumerated in the Trustee's Complaint against it, were not for its benefit. Elmira has not expanded on that assertion either in its pleadings or at oral argument.

Clearly under the Internal Revenue Code and Regulations, notwithstanding that AAPEX had a contractual obligation with Elmira under the Payroll Service Agreement to pay the Elmira's payroll taxes, Elmira, as the employer, was liable for these penalties and interest as soon as its payroll taxes were not paid when due. When AAPEX, in fulfillment of its contractual obligations under the Payroll Service Agreement, paid the assessed penalties and interest during the preference period, it paid and discharged the liability which Elmira had as an employer-taxpayer. Therefore, the payment was clearly for the benefit of Elmira within the meaning and intent of Section 547(b).

Furthermore, since the Trustee has not sought to avoid the transfer of funds to the IRS, Elmira's liability to the United States Government for the penalties and interest remains discharged.

### VI. *The Extension of the Begier Holding*

It would not be appropriate on the facts and circumstances of these cases to extend the *Begier* holding because: (1) the transfers which the Trustee seeks to avoid were not payments by a debtor-employer of its payroll taxes to the IRS; (2) the transfers which the Trustee seeks to avoid were in some cases not even made to the IRS, but were made to the clients of AAPEX which, as creditors, demanded the payment over of an amount equivalent to what they had paid to AAPEX pursuant to the Payroll Service Agreement; (3) some of the transfers which the Trustee seeks to avoid were the payment of penalties and interest which were not actually or in the abstract withheld from any employee's wages; (4) a third-party service provider operating a Ponzi Scheme should not be allowed to identify or reidentify Section 7501 trust funds on behalf of an employer-taxpayer client, to the extent that it is clear that the funds so identified or reidentified are not the actual funds of that employer-taxpayer

client; (5) some or all of the transfers which the Trustee seeks to avoid, as enumerated in the Complaints, were not of funds that can be determined to have been the funds of Elmira, Canton or Williamsport by the use of reasonable tracing methods and presumptions; and (6) to extend the holding of *Begier* on the facts and circumstances of this case would unnecessarily undermine the Bankruptcy Code's policy of equality of distribution and would substantially prejudice many of the clients of AAPEX who paid to AAPEX an amount equivalent to one hundred percent of the funds necessary to pay their payroll taxes, but had a significantly smaller percentage of their taxes paid than other clients who had payments made on their behalf during the preference period.

### VII. *Trust Funds*

As stated above, at this early stage of the adversary proceedings, the Court cannot determine as a matter of law that the funds paid by Elmira and Williamsport to AAPEX to perform the services contracted for in the Payroll Service Agreement, including the payment of payroll taxes, were not required to be and in fact held in trust by AAPEX, so that if the funds paid by AAPEX to the IRS, Elmira or Williamsport during the preference period could in fact be traced to Elmira, Williamsport or Canton, they would not be property of the estate for purposes of Section 547(b). At this point in the adversary proceeding, although I cannot determine as a matter of law that these funds are not trust funds, the evidence presented to date does not indicate that they are trust funds. This evidence includes: (1) the provisions of the Payroll Service Agreement are inconsistent, ambiguous and ineffective to clearly create an express trust; (2) the actions by AAPEX in the implementation of the Payroll Service Agreement do not clearly indicate that it considered itself a trustee hold-

ing the funds in specific trusts in the amounts and for the benefit of the clients who paid the funds over to it; and (3) the actions of Elmira and Williamsport in demanding funds from AAPEX that they knew were not the funds that they had paid to AAPEX, and utilizing those funds for their own benefit, are inconsistent with intention and understanding of a grantor that funds paid over by it to a trustee in trust would be held in trust for them only.

### *CONCLUSION*

The Canton and Williamsport motions to dismiss are in all respects denied. The Elmira motion for summary judgment is in all respects denied. These adversary proceedings are schedules for a telephonic pretrial conference on February 17, 2000 at 2:30 p.m. to be initiated by David D. MacKnight, Esq., attorney for Elmira.

**IT IS SO ORDERED.**